**BEFORE**
**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NHI MECHANICAL MOTION LLC,<br>Plaintiff,<br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION;<br>THE HONORABLE RODNEY S. SCOTT,<br>*in his official capacity as Commissioner of U.S. Customs and Border Protection*; and<br>the UNITED STATES OF AMERICA,<br>Defendants. | COURT NO. 26-04995 |

**COMPLAINT**

The Plaintiff NHI Mechanical Motion LLC ("Plaintiff"), by and through its attorneys, alleges as follows:

1. The Plaintiff is an "importer" within the meaning of 19 C.F.R. § 101.1 and, as such, is responsible for paying tariffs on imported goods.

2. Beginning in February 2025, the President of the United States, Donald J. Trump, issued a series of executive orders invoking the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. 1701 *et seq.*, to unilaterally impose new and substantial tariffs on goods imported from any country, at any rate, for no specified duration or calculation methodology, without public notice or opportunity to comment ("IEEPA Tariffs").

3. These executive orders levied the IEEPA Tariffs on goods originating from countries from which the Plaintiff sources its imports. As a result, the Plaintiff has been responsible for paying the IEEPA Tariffs on those imported goods.

4. However, on February 20, 2026, the U.S. Supreme Court struck down the IEEPA Tariffs, holding "th[e] IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5. The U.S. Supreme Court also confirmed that challenges to the IEEPA Tariffs fall "within the exclusive jurisdiction" of the U.S. Court of International Trade. *Id.* at 5, n.1. Accordingly, this Court possesses jurisdiction and authority to grant remedial relief, including the refund of the IEEPA Tariffs paid by importers.

6. Consistent with the *Learning Resources* decision, therefore, the Plaintiff seeks for itself a full refund from Defendants of all the IEEPA Tariffs paid to the United States, with interest as provided by law.

## PARTIES

7. Plaintiff NHI Mechanical Motion LLC is a New Hampshire corporation with its principal place of business at 35 Connecticut Riverbend Place, Claremont, New Hampshire 03743. The Plaintiff is a manufacturer of mechanical motion parts and assemblies, including pulleys, sprockets, bearings, and conveyor products. As an importer within the meaning of 19 C.F.R. § 101.1, the Plaintiff has made numerous entries of imported goods subject to the IEEPA Tariffs.

8. Defendant United States Customs and Border Protection ("CBP") is a component federal agency of the U.S. Department of Homeland Security, headquartered in Washington, D.C., charged with assessing and collecting duties on merchandise imported into the United States.

9. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10. Defendant United States of America received the unlawful IEEPA Tariffs and is the statutory defendant for purposes of suits seeking relief under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1).

11. In this complaint, Defendants are referred to collectively as "CBP."

## JURISDICTION

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i)(1). *See Learning Resources*, slip op. at 5, n.1.

13. This Court possesses the powers in law and equity of a United States district court under 28 U.S.C. § 1585. As a result, in a civil action commenced under 28 U.S.C. § 1581(i)(1), this Court may enter money judgments and order appropriate relief, including declaratory judgments and injunctions, under 28 U.S.C. § 2643. 28 U.S.C. §§ 2643(a)(1), (c)(1).

## STANDING

14. To establish standing, a plaintiff must show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

15. Here, the Plaintiff has standing because the Plaintiff is an importer of goods subject to the unlawful IEEPA Tariffs as implemented and collected by CBP, and has paid such duties, thereby suffering injury. The relief sought from this Court would redress those injuries. As a result, the Plaintiff is an interested party pursuant to 28 U.S.C. § 2631(i) standing.

## TIMELINESS

16. A plaintiff invoking the Court's residual jurisdiction under 28 U.S.C. § 1581(i)(1) must commence the action "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

17. Beginning in February 2025, President Trump issued executive orders that resulted in the collection of the IEEPA Tariffs. These orders were published in the *Federal Register* shortly thereafter. The instant action is filed within two years of the date that these orders were issued and published, and also within two years of the date upon which the Plaintiff first paid the IEEPA Tariffs.

18. Thus, the Plaintiff has timely commenced this action within the applicable two-year statute of limitations prescribed by 28 U.S.C. § 2636(i).

## GENERAL PLEADINGS

### I. President Trump Issued a Series of Tariffs Pursuant to the IEEPA.

#### A. The Trafficking Tariffs and Reciprocal Tariff Regime

19. To exercise any of the enumerated authorities prescribed by the IEEPA, the president must first identify "any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States," and then "declare[] a national emergency with respect to such threat." 50 U.S.C. § 1701.

20. On January 20, 2025, President Trump readied an additional tariff on Mexico pursuant to the IEEPA by declaring a national emergency at the southern border of the United States via Proclamation 10886. *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327 (Jan. 29, 2025).[1]

21. With a national emergency declared pertaining to the U.S.-Mexico border, President Trump, on February 1, 2025, issued Executive Order 14194 to impose an additional 25%

[1] On July 15, 2025, President Trump expanded the national emergency at the southern border to the neighboring "maritime borders and approaches" between the United States and Mexico. *Notice on Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 37371 (Aug. 4, 2025).

tariff on imported goods of Mexican origin, citing the IEEPA as the statutory authority to levy such tariffs. *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025). Executive Order 14194 justifies this additional 25% tariff because of a "grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" but a "failure of Mexico to arrest, seize, detain, or otherwise intercept {drug trafficking organizations}, other drug and human traffickers, criminals at large, and illicit drugs." *Id.* The additional 25% tariff on imported goods of Mexican origin, however, was scheduled to take effect February 4, 2025. *Id.*

22. Also on February 1, 2025, President Trump issued Executive Order 14193 to expand the scope of the national emergency declared in Proclamation 10886 to the northern border of the United States and imposed an additional 25% tariff on imported goods of Canadian origin, again citing the IEEPA as the statutory authority to do so. *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025). Executive Order 14193 justifies these decrees because of a "public health crisis of deaths due to the use of fentanyl and other illicit drugs, and the failure of Canada to do more to arrest, seize, detain, or otherwise intercept {drug trafficking organizations}, other drug and human traffickers, criminals at large, and drugs." *Id.* The additional 25% tariff on imported goods of Canadian origin, however, was scheduled to take effect February 4, 2025. *Id.*

23. On February 1, 2025, President Trump also issued Executive Order 14195 to again expand the scope of the national emergency declared in Proclamation 10886 to address "the sustained influx of synthetic opioids" from China and impose an additional 10% tariff on imported goods of Chinese origin, citing the IEEPA as the statutory authority to do so once more. *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*,

90 Fed. Reg. 9121 (Feb. 7, 2025). Executive Order 14195 justifies these decrees because of "the failure of the [Chinese] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.* The additional 10% tariff on imported goods of Chinese origin, however, was scheduled to take effect February 4, 2025. *Id.*

24. Two days later, on February 3, 2025, President Trump delayed the February 4, 2025 effective date for the additional tariffs on imported goods of Mexican and Canadian origin until March 4, 2025, via Executive Order 14198 and Executive Order 14197, respectively. *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9185 (Feb. 10, 2025); *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9183 (Feb. 10, 2025). On March 6, 2025, President Trump then reduced the tariffs on potash of Mexican and Canadian origin by fifteen percentage points to an additional 10% tariff effective March 7, 2025, via Executive Order 14232 and Executive Order 14231, respectively. *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11787 (Mar. 11, 2025); *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11785 (Mar. 11, 2025).

25. In response to Chinese retaliation to the additional 10% tariff on imported goods from China pursuant to the IEEPA,[2] President Trump issued Executive Order 14228 on March 3, 2025, increasing the tariff on imported goods of Chinese origin by ten percentage points to 20%, effective March 4, 2025. *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 7, 2025).

[2] *See, e.g.*, Tariff Commission of the State Council, *Announcement of the Tax Commission No. 1 of 2025*, MINISTRY OF FINANCE (P.R.C.) (Feb. 4, 2025), https://www.mof.gov.cn/zhengwuxinxi/caizhengxinwen/202502/t20250204_3955222.htm; Tariff Commission of the State Council, *Announcement of the Tax Commission No. 2 of 2025*, MINISTRY OF FINANCE (P.R.C.) (Mar. 4, 2025), https://gss.mof.gov.cn/gzdt/zhengcefabu/202503/t20250304_3959228.htm.

26. Because each underlying executive order directed at Mexico, Canada, and China claimed justification under the IEEPA due to a national emergency related to illicit drug trafficking, this set of the IEEPA Tariffs is known collectively as the "Trafficking Tariffs."

27. On April 2, 2025, President Trump invoked the IEEPA again to impose a new tariff regime via Executive Order 14257 to address "a lack of reciprocity in our bilateral trade relationships…as indicated by large and persistent annual U.S. goods trade deficits, {which} constitute an unusual and extraordinary threat to the national security and economy of the United States." *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025) (the "Reciprocal Tariff Regime"). Specifically, this Reciprocal Tariff Regime levied a 10% baseline tariff "on all imports from all trading partners," effective April 5, 2025, and an additional, country-specific "reciprocal" rate on imported goods from fifty-seven countries, effective April 9, 2025. *See id.* at Annex I. The additional, country-specific "reciprocal" rates range from 1% to 40%. *See id.*

28. On April 8, 2025, in response to Chinese retaliation following the announcement of the Reciprocal Tariff Regime,[3] President Trump issued Executive Order 14259, increasing the China-specific "reciprocal" rate on imported goods of Chinese origin by fifty percentage points to 74%, effective April 9, 2025. *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025). This update did not disturb the additional 20% tariff imposed on China via Executive Order 14228

[3] Tariff Commission of the State Council, *Announcement of the Tax Commission No. 4 of 2025*, MINISTRY OF FINANCE (P.R.C.) (Apr. 4, 2025), https://gss.mof.gov.cn/gzdt/zhengcefabu/202504/t20250404_3961451.htm.

already in effect, meaning imported goods from China now faced a 104% tariff due to President Trump's invocation of the IEEPA since the beginning of his second term. *See id.*

29. On the date the additional country-specific rates under the Reciprocal Tariff Regime were scheduled to take effect—April 9, 2025—President Trump issued Executive Order 14266 to suspend those rates from taking effect for ninety days (*i.e.*, until July 8, 2025), except the country-specific rate for China, which he raised from 74% to 115% due to more Chinese retaliation.[4] *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025). As a result, imported goods from China now faced a 145% tariff due to President Trump's invocation of the IEEPA since the beginning of his second term. *See id.*

30. On April 14, 2025, several companies filed an action in this Court challenging the legality of both the Trafficking Tariffs and the Reciprocal Tariff Regime. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). This Court held that both sets of tariffs imposed pursuant to the IEEPA were unlawful, and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), sitting *en banc*, affirmed. *See V.O.S. Selections, Inc. v. Donald J. Trump*, 722 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025). It was the Federal Circuit's affirmance that was subsequently upheld by the U.S. Supreme Court on February 20, 2026.

31. In the months following the *V.O.S. Selections* complaint, President Trump continued to invoke the IEEPA to issue additional executive orders imposing new tariffs, while modifying existing ones already in place.

---

[4] Tariff Commission of the State Council, *Announcement of the Tax Commission No. 5 of 2025*, MINISTRY OF FINANCE (P.R.C.) (Apr. 9, 2025), https://gss.mof.gov.cn/gzdt/zhengcefabu/202504/t20250409_3961684.htm; *see also* Tariff Commission of the State Council, Tax Commission *Announcement No. 6 of 2025*, MINISTRY OF FINANCE (P.R.C.) (Apr. 11, 2025), https://gss.mof.gov.cn/gzdt/zhengcefabu/202504/t20250411_3961823.htm.

32. While the *V.O.S. Selections* litigation and related cases remained pending, CBP continued to collect the IEEPA Tariffs until, on February 22, 2026, the agency announced that the IEEPA Tariffs "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026, 9:57 p.m.).[5]

**B. CBP's Implementation of the Unlawful IEEPA Tariffs**

33. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted a new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). Accordingly, the United States International Trade Commission ("USITC") publishes and maintains the HTSUS to set forth tariff rates and statistical categories, factoring in presidential directives. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

34. The HTSUS is organized through a hierarchical structure of chapters, headings, and subheadings. 19 U.S.C. § 1202. The chapters describe broad sectors of merchandise, the headings identify general categories of merchandise within each chapter, and the subheadings provide more particularized divisions of goods within each general category. *Id.*

35. When goods enter the United States, however, CBP is responsible for confirming the HTSUS classification of those goods and assessing and collecting the applicable tariffs at the rate established by the HTSUS. *See* 19 U.S.C. §§ 1202, 1500, 1502. As a result, among

[5] Available at: https://content.govdelivery.com/accounts/USDHSCBP/bulletins/40b11c9.

its responsibilities, CBP is charged with the assessment and collection of duties, including those imposed pursuant to the IEEPA. *See* 19 U.S.C. §§ 1202, 1500, 1502.

36. To ensure the IEEPA Tariffs have been properly assessed and collected, the Defendants directed amendments to the HTSUS, requiring that goods subject to the IEEPA Tariffs are entered under newly created tariff codes. *See, e.g.*, *Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9038 (Feb. 5, 2025); *Notice of Implementation of Additional Duties on Products of Canada Pursuant to the President's Executive Order 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11423 (Mar. 6, 2025); *Notice of Implementation of Additional Duties on Products of Mexico Pursuant to the President's Executive Order 14194, Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 11429 (Mar. 6, 2025); *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11426 (Mar. 6, 2025); *Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14256, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China As Applied to Low-Value Imports*, 90 Fed. Reg. 17608 (Apr. 28, 2025).

**C. Liquidation**

37. "Liquidation" means "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

38. Generally, when goods are imported into the United States, the importer of record pays an estimated duty on the entry based on a customs declaration, which provides the HTSUS classification, origin, and value of the imported goods. *See* 19 U.S.C. § 1484. CBP subsequently reviews the customs declaration and may inspect the goods.

39. CBP then "fix{es} the final appraisement of {the} merchandise" by confirming its "final" value, HTSUS classification, applicable rate of duty, and duty owed on such merchandise. *See* 19 U.S.C. § 1500.

40. Once CBP determines the final duty amount owed by the importer of record, CBP "liquidates" the entry and notifies the importer of record whether the merchandise will be liquidated at the amount of duty asserted in the customs declaration, or if additional duty payment is required, or if a refund is due. *See* 19 U.S.C. § 1504.

41. By operation of law, liquidation must occur within one year from the date of entry, unless extended. *See* 19 U.S.C. § 1504(a). However, CBP tries to liquidate entries 314 days after the date of entry of the goods.[6]

42. Upon an importer of record's request and a showing of good cause, CBP has discretion to extend the liquidation deadline for up to one year, with the possibility of renewing the extension request annually for up to three additional years (*i.e.*, up to four years from the merchandise's date of entry). *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

43. This Court also possesses the equitable authority to suspend liquidation. *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021).

---

[6] *Post Summary Corrections*, U.S. CUST. & BORDER PROTECTION, https://www.cbp.gov/trade/programs-administration/entry-summary/post-summary-correction (last updated May 15, 2024) (noting CBP operates on a 314-day liquidation cycle).

44. Liquidation is "final and conclusive" unless an importer of record files a protest contesting the liquidation within 180 days of the liquidation notice and asks CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514; *but see* 19 U.S.C. § 1501 (noting CBP may reliquidate an entry on its own accord within ninety days from the date of the original liquidation, notwithstanding any protest filing). However, not all liquidations are subject to a protest: when CBP acts in a ministerial capacity (*i.e.*, without discretion) in assessing a duty, the liquidation cannot be protested. 19 U.S.C. § 1514; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

45. That limitation does not foreclose relief here though. In *AGS Co. Automotive Sols. v. U.S. Customs and Border Protection, et al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA Tariffs. In a related action, the government also represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to [the] IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025); *see also AGS Co. Automotive Sols. v. U.S. Customs and Border Protection, et al.*, No. 25-00255, ECF No. 34 at 3–4 (Ct. Int'l Trade Jan. 8, 2026) (confirming this Court has the authority to reliquidate entries subject to the IEEPA-based duties beyond the Trafficking Tariffs and the Reciprocal Tariff Regime, including those imposed on goods from Brazil and India).

## II. The U.S. Supreme Court Has Ruled That the IEEPA Tariffs Are Unlawful.

46. On May 28, 2025, a three-judge panel of this Court entered summary judgment in favor of the plaintiffs in *V.O.S. Selections* and issued a permanent injunction barring the government from enforcing the IEEPA-based duties challenged in that action. The government then appealed to the Federal Circuit.

47. On May 29, 2025, the Federal Circuit stayed this Court's judgment and injunction while directing expedited briefing and a prompt hearing.

48. On August 29, 2025, the Federal Circuit, sitting *en banc*, issued its decision, affirming this Court's determination that the IEEPA Tariffs are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

49. In a separate action brought by a different group of importers of record, the U.S. District Court for the District of Columbia held that the IEEPA does not authorize tariffs of any kind on May 29, 2025. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the U.S. Court of Appeals for the D.C. Circuit, but before the federal intermediate appellate court held argument, the U.S. Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with the oral argument on November 5, 2025.

50. On February 20, 2026, the U.S. Supreme Court issued its opinion in the consolidated cases, holding that "th[e] IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.[7]

## III. Plaintiff Paid the IEEPA Tariffs.

51. As of the date of this complaint, the Plaintiff has paid the IEEPA Tariffs.

52. The Plaintiff's imports have been subject to the IEEPA Tariffs and, as such, entered the United States under new HTSUS codes.

---

[7] This Complaint cites to the "*Learning Resources*" slip opinion because it was the lead case for purposes of the U.S. Supreme Court's case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the U.S. Supreme Court affirmed the Federal Circuit's decision in *V.O.S. Selections*. *See Learning Resources*, slip op. at 21.

53. The Plaintiff has paid the IEEPA Tariffs on numerous entries.

## STATEMENT OF CLAIMS

### COUNT I
### THE U.S. SUPREME COURT'S DECISION IN *LEARNING RESOURCES* COMPELS THE CONCLUSION THAT THE IEEPA TARIFFS ARE UNLAWFUL

54. The Plaintiff incorporates paragraphs 1–53 by reference.

55. In *Learning Resources*, the U.S. Supreme Court addressed challenges to the President's authority to impose tariffs under the IEEPA and considered this Court's decision and the Federal Circuit's affirmance of this Court's decision in *V.O.S. Selections, Inc. v. Donald J. Trump*, 722 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), ultimately holding that the President exceeded his authority under the IEEPA, 50 U.S.C. 1701, *et seq.*, and acted *ultra vires* by imposing tariffs on imported goods.

56. The U.S. Supreme Court further held that tariffs imposed under the IEEPA are unlawful *ab initio*. As the U.S. Supreme Court ruled: "Our task…is to decide only whether the power to "regulate…importation," as granted to the President in [the] IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The U.S. Supreme Court therefore upheld the Federal Circuit's judgment, which in turn had affirmed this Court's merits decision invalidating the IEEPA Tariffs. *Id.* at 21.

57. In addition, in its motion to the Federal Circuit in *V.O.S. Selections* to stay this Court's judgment and injunction, CBP agreed that "[i]f tariffs imposed on plaintiffs during these [IEEPA-related] appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

58. Bound by the U.S. Supreme Court's decision in *Learning Resources*, this Court should order refunds of all of the IEEPA Tariffs paid by the Plaintiff and compel CBP to honor its representation that such refunds include all accrued interest as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court grant the following relief:

(a) order CBP to reliquidate any entries liquidated with the IEEPA Tariffs;

(b) order CBP to liquidate all unliquidated entries subject to the IEEPA Tariffs without assessing such duties;

(c) order the United States to refund to the Plaintiff the IEEPA Tariffs collected on the Plaintiff's entries, with interest as provided by law;

(d) award the Plaintiff reasonable costs, including attorneys' fees, incurred in bringing this action;

(e) award the Plaintiff other such damages as are appropriate; and

(f) grant the Plaintiff such additional relief as the Court may deem just or proper.

Respectfully submitted,

/s/ David M. Schwartz

David M. Schwartz (Lead Attorney)
Kristina Shcheglazova
Aaron C. Mandelbaum

THOMPSON HINE LLP

1999 K Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 263-4170
Email: David.Schwartz@thompsonhine.com

*Counsel for the Plaintiff*

Date: November 4, 2026

## CERTIFICATE OF SERVICE

Pursuant to Rules 4(b) and 4(h) of the Rules of the U.S. Court of International Trade, I certify that on November 4, 2026, copies of the foregoing Summons, Complaint, Form 5, Forms 11, and Form 13 will be served upon the following individuals, by certified mail, return receipt requested:

**UPON THE UNITED STATES**

Justin Miller, Esq.
Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
**U.S. Department of Justice**
Room 346
26 Federal Plaza
New York, New York 10278

**UPON RODNEY S. SCOTT**

The Honorable Rodney S. Scott
Commissioner
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229-0002

**UPON U.S. CUSTOMS AND BORDER PROTECTION**

U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229-0002

/s/ David M. Schwartz
David M. Schwartz (Lead Attorney)

THOMPSON HINE LLP

1999 K Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 263-4170
Email: David.Schwartz@thompsonhine.com

Date: November 4, 2026